UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-23953-MOORE

ROSANGELES VICIOSO, *on behalf of her
minor child*, J.R.C.,

    Plaintiff,

v.

KILOLO KIJAKAZI, *Acting Commissioner
of Social Security*,

    Defendant.
_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon (i) Plaintiff's Motion for Summary Judgment (ECF No. 20), filed through counsel by Plaintiff Rosangeles Vicioso on behalf of her minor son, J.R.C., and upon (ii) the Acting Commissioner of Social Security's (the "Acting Commissioner") combined Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (ECF No. 22). Plaintiff did not file a reply brief, and the time to do so has passed. Pursuant to the Clerk's directive of this cause, the instant appeal from a decision of the Acting Commissioner has been referred to the undersigned United States Magistrate Judge for a ruling on all pretrial non-dispositive matters and for a Report and Recommendation on any dispositive matters.[1] (ECF No. 2). Having reviewed the briefing, the Certified Administrative Record (ECF No. 19),[2] the record in the instant action, and being otherwise fully advised in the matter, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF

---

[1] This case is assigned to the Honorable K. Michael Moore, United States District Judge.
[2] Citations to the Certified Administrative Record (ECF No. 19) are indicated by "R." followed by the Acting Commissioner's Bates numbering stamp (the bold font numbers located in the bottom right-hand corner of each page).

No. 20) be **DENIED**, that the Acting Commissioner's Motion for Summary Judgment (ECF No. 22) be **GRANTED**, and that the decision of the Acting Commissioner be **AFFIRMED**.

**I.     PROCEDURAL BACKGROUND**

On December 10, 2019, Plaintiff Rosangeles Vicioso filed an application for Supplemental Security Income on behalf of her minor son, J.R.C., claiming a disability onset date of August 1, 2009, due to J.R.C.'s speech problems, attention deficit hyperactivity disorder (ADHD), and inability to concentrate.  (R. 16, 56, 300–310, 352).  The claim was denied at the initial level (R. 56–68), and upon reconsideration (R. 69–85).

Plaintiff requested a hearing before an administrative law judge ("ALJ") which occurred on May 25, 2022, by telephone due to the circumstances presented by the COVID-19 pandemic. J.R.C.'s mother, the Plaintiff in this appeal, appeared and testified on behalf of J.R.C.  On June 16, 2022, ALJ Norman Hemming issued a 17-page decision finding that J.R.C. had not been disabled within the meaning of Section 1614(a)(3)(C) of the Social Security Act since December 10, 2019, the date the Application was filed.  (R. 16–33).

Plaintiff, on behalf of J.R.C., sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied review on November 14, 2022.  (R. 1–3).  On December 5, 2022, Plaintiff on behalf of J.R.C. filed the instant action seeking review of the ALJ's decision as the final decision of the Acting Commissioner of the Social Security Administration, pursuant to 42 U.S.C. § 405(g).

**II.    REGULATORY FRAMEWORK**

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

All claimants in social security cases, including those under the age of eighteen, bear the burden of proof. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a). A claimant under the age of eighteen is disabled if he has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security Administration has established a three-step sequential evaluation process to determine whether a claimant under the age of eighteen is disabled. 20 C.F.R. § 416.924(a); *see also Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999).

At step one, if the child is engaged in substantial gainful activity, he is not disabled and the claim will not be reviewed further. 20 C.F.R. § 416.924(a). Substantial work activity "involves doing significant physical or mental activities," while gainful work activity refers to "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(a)–(b); 20 C.F.R. §§ 416.971–416.976. However, "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" are not considered to be substantial gainful activity. 20 C.F.R. § 416.972(c).

At step two, the child must have medically determinable physical or mental impairment(s) or combination of impairments that is severe. 20 C.F.R. § 416.924(a). The ALJ will not consider

an impairment to be severe if it "is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations[.]" 20 C.F.R. § 416.924(c).

Finally, at step three, if the child's impairments are severe, the child must have an impairment(s) that "meets, medically equals, or functionally equals the listings" in 20 C.F.R. Pt. 404, Subpt. P, App. 1. "An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924(d). If the child's impairment meets one of the listings, the child is declared disabled. 20 C.F.R. § 416.294(d)(1). A child's limitations "meet" the limitations in the Listings if the child suffers from the limitations specified in the Listings for that child's severe impairment. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criterial of the Listings and the duration requirement."). Alternatively, a child's limitations "medically equal" the limitations in the Listings if the child's limitations are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

If the child's impairment does not meet or medically equal a listed impairment, the ALJ must determine if the impairment is functionally equivalent to the listings. 20 C.F.R. §§ 416.924(d), 416.926a(a). A child's impairment functionally equals the listings if it is of "listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain, as explained in this section." 20 C.F.R. § 416.926a(a). A marked limitation "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete

4

activities." 20 C.F.R. § 416.926a(e)(3)(i). The six domains are "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 821 (11th Cir. 2015) (citing 20 C.F.R. § 416.926a(b)(1)). When determining whether a child's limitations functionally equal the listings, the ALJ must "assess the interactive and cumulative effects of all of the impairments for which [the Social Security Administration] ha[s] evidence, including any impairments [the claimant] ha[s] that are not 'severe.'" 20 C.F.R. § 416.926a(a). In assessing functional limitations, the ALJ must consider "all the relevant factors in §§ 416.924a, 416.924b, and 416.929[.]" 20 C.F.R. § 416926a(a).

If the ALJ finds at step three that the child does not have impairments that meet, medically equal, or functionally equal the listings, or if the impairments do not meet the duration requirement, the child will be found not disabled. 20 C.F.R. § 416.924(a).

To render the foregoing conclusions, the ALJ considers "all evidence in [the child's] case record," including "information from medical sources (such as [the child's] pediatrician or other physician; psychologist; qualified speech-language pathologist; and physical, occupational, and rehabilitation therapists) and nonmedical sources (such as [the child's] parents, teachers, and other people who know [the child])." 20 C.F.R. § 416.924a(a).

## III.  ADMINISTRATIVE FINDINGS

After reviewing the record and conducting a telephonic hearing, the ALJ determined that J.R.C. was not disabled within the meaning of the Social Security Act. Following the hearing in which Plaintiff's testimony was taken, the ALJ issued a written decision. As part of the analysis,

the ALJ conducted the three-step inquiry for determining whether a child under the age of 18 is disabled.

Prior to step one, the ALJ determined that J.R.C. is a minor who was a school-aged child at the time the application was filed and was an adolescent at the time the ALJ rendered the decision. (R. 17).

At step one, the ALJ found that J.R.C. had not engaged in substantial gainful activity since the filing of the application on December 10, 2019. (R. 17).

At step two, the ALJ found that J.R.C. has severe impairments involving speech and language, borderline intellectual functioning, and hyperlipidemia. (R. 17). The ALJ also found that J.R.C. has non-severe impairments of attention deficit hyperactivity disorder (ADHD), obesity, and disorders of the thyroid gland. (R. 17). The ALJ found that J.R.C.'s non-severe impairments caused no more than minimal limitation of physical or mental ability to do basic work activities. (R. 17).

At step three, the ALJ made two findings. First, the ALJ found that J.R.C. does not have an impairment or combination of impairments that meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). In making this first finding, the ALJ determined that the medical evidence did not establish J.R.C.'s impairments, individually or in combination, met or equaled the severity of the criteria for Listing 112.02 for neurocognitive disorders or Listing 112.05 for intellectual disorders. (R. 18).

Second, the ALJ found that J.R.C. does not have an impairment or combination of impairments that functionally equals the severity of the listings. (R. 19). After reviewing the evidence in the record, the ALJ assessed J.R.C.'s functional limitations across the six domains, finding that J.R.C. has: (i) a marked limitation in acquiring and using information; (ii) less than a

marked limitation in attending and completing tasks; (iii) less than a marked limitation in interacting and relating with others; (iv) no limitation in moving about and manipulating objects; (v) less than a marked limitation in the ability to care for himself; and (vi) less than a marked limitation in health and physical well-being.  (R. 19–20).  Because J.R.C. did not have either a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning, the ALJ found that J.R.C. did not have an impairment or combination of impairments that functionally equal a listing.

Based on these findings, the ALJ determined that J.R.C. had not been disabled since December 10, 2019, the date the application was filed.

### IV. STANDARD OF REVIEW

District courts reviewing an ALJ's denial of a disability claim treat the denial as the Commissioner's final decision.  *Walker v. Comm'r of Soc. Sec.*, 987 F.3d 1333, 1338 (11th Cir. 2021).  District courts review an ALJ's denial for "whether substantial evidence supports the decision and whether the correct legal standards were applied." *Id.* (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

Substantial evidence constitutes relevant evidence that a reasonable person would find sufficiently supports the conclusion.  *Mitchell v. Comm'r, Social Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Winschel*, 631 F.3d at 1178).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The reviewing court must scrutinize the entire record to determine if substantial evidence exists, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), but may not "reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Dyer*, 395 F.3d at 1210 (quoting *Phillips v. Barnhart*,

357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  If substantial evidence supports the Commissioner's decision, the Court "must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8).

Reversal is mandated if the Commissioner incorrectly applied the law or insufficiently articulated legal application, leaving the reviewing court unable to ensure proper his legal application.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## V.    DISCUSSION

Plaintiff's appeal presents a single issue for review.  She argues that the ALJ failed to properly assess the opinions of the State agency consultants at the initial and reconsideration levels. According to Plaintiff, the ALJ failed to properly discuss the consistency and supportability of those opinions, such that the ALJ improperly found those opinions persuasive, adopted them, and erroneously concluded that J.R.C. was not disabled.

Specifically, Plaintiff first argues that the ALJ's assessment of the supportability factor was conclusory.  She asserts that the ALJ failed to explain his conclusions: (i) that the consultants' opinions were supported by the record, though the opinions do not consider post-October 2020 evidence; (ii) that the consultants provided detailed explanations for their opinions, despite the fact that the opinions merely contain short notes; and (iii) that the consultants' familiarity with Social Security regulations weighs in favor of finding the opinions persuasive.  Second, Plaintiff asserts that the ALJ erroneously concluded the consultants' opinions were consistent with the record, which she argues is a flawed conclusion because the ALJ assessed the consistency of the opinions in light of evidence created *after* the opinions were written.  Plaintiff asserts that, if the ALJ had not found the consultants' opinions persuasive, the evidence would have established that J.R.C.

8

has more significant limitations than those assessed and that J.R.C. would have been found disabled.

In response, the Acting Commissioner first argues that even assuming the ALJ's assessment of the consultants' opinions was flawed, Plaintiff has identified no competing evidence in the record supporting a finding of greater limitation in any of the relevant domains than what was assessed by the ALJ in his decision. To that end, the Acting Commissioner argues that substantial evidence supports the ALJ's decision. Notwithstanding, the Acting Commissioner argues that the ALJ properly assessed the supportability and consistency of the consultants' opinions.

Before turning to Plaintiff's arguments, the Court notes that Plaintiff does not identify any *other* opinion in the administrative record, found unpersuasive by the ALJ, in which J.R.C. was assessed as having greater limitations in the six domains than the limitations that were assessed by the state agency consultants. That is, Plaintiff argues that it was improper for the ALJ to find the consultants' opinions persuasive here, but Plaintiff does not point to any other opinion in the record assessing J.R.C. as having "marked" limitations in additional domains.

### A. Standards Governing the Consideration of Medical Opinions and Prior Administrative Medical Findings

In 2017, the Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017, including Plaintiff's claim filed on behalf of J.R.C. at issue here. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The revised regulations provide that the Social Security Administration will consider medical opinions or prior administrative medical findings using certain factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The factors are (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as

9

familiarity with the other evidence in the claim or an understanding of the program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). The most important of these factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). As such, the ALJ must explain how he considered these two factors when determining the persuasiveness of a medical source's medical opinion. *Id.* The ALJ may, but is not required to, also explain how he considered the remaining factors. *Id.*

For supportability, the rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, the rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520(c)(2), 416.920c(c)(2).

"Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records, and (2) consistent with the other evidence of record." *Mercado v. Comm'r of Soc. Sec.*, No. 6:22-CV-287-DCI, 2023 WL 145154, at *4 (M.D. Fla. Jan. 10, 2023) (quoting *Tocco v. Comm'r of Soc. Sec.*, No. 8:21-cv-399-TPB-SPF, 2022 WL 3362863, (M.D. Fla. July 28, 2022)).

**B.    Analysis**

The relevant excerpt from the ALJ's decision, in which the ALJ found the consultants' opinions persuasive, is as follows:

> In determining the degree of limitation in the claimant's functioning, I have also considered the medical opinions in accordance with the applicable regulations.

> Turning to evaluation of this evidence, state agency consultants at the initial and reconsideration levels, Barbara Lewis, Ph.D., Cristina Rodriguez, M.D., Jermaine Robertson, Ph.D., and Barry Bercu, M.D., determined that the claimant had a marked limitation in acquiring and using information (Ex. 2A/7–10; 4A/10–13). In addition, they found less than marked limitations in attending and completing tasks, interacting and relating with others, and caring for yourself. I find the medical consultants' opinion persuasive. Although the consultants are non-treating and non-examining sources, the consultants' opinions were supported by their review of the underlying record, a detailed explanation, and their familiarity with Social Security Regulations and program standards. Moreover, their opinions are generally consistent with the evidence as a whole, specifically, test results showed a mild/moderate receptive language delay (Ex. 19F/16). He was able to receptively understand common use objects, shapes, colors, letters, and numbers as well as basic phonics and sight words.

(R. 24).

The ALJ's decision reflects that the ALJ considered both the supportability and the consistency of the consultants' opinions in finding those opinions persuasive, as required under the regulations.

Supportability.

In finding the opinions persuasive, the ALJ noted that the consultants' opinions were supported by their review of the underlying record, that the opinions contained detailed explanations, and that the consultants are familiar with the Social Security Administration's regulations.[3]

In this appeal and as to the supportability factor, Plaintiff does not argue that the consultants' opinions were not supported by the objective medical evidence and other evidence that the consultants considered in rendering their opinions. Rather, Plaintiff argues that the ALJ's analysis of the supportability factor was conclusory and that the consultants' opinions should have been found unpersuasive because those opinions did not consider evidence developed after the opinions were rendered, as those opinions were rendered two years before the ALJ made his

---

[3] The Court addresses the consultants' familiarity with the Social Security Administration regulations separately.

11

decision on J.R.C.'s claim. The latter point, regarding consideration of evidence developed after the consultants' rendered their opinions, speaks to the consistency factor and not the supportability factor, because the argument pertains to the persuasive value of the opinions in light of other evidence in the record.

As to the former point, regarding the ALJ's articulation of the supportability factor analysis and the consultants' explanations for their own opinions, the ALJ concluded that the opinions were supported by the consultants' review of the record and with detailed explanations. The two opinions at issue reflect that the consultants' analyses of the six functional domains is supported by citation to and discussion of the records and documentation submitted as part of the consultants' review of J.R.C.'s claim at the initial and reconsideration levels. (R. 63–66, 79–82). For example, at the initial level, the medical consultants determined that J.R.C. had "marked" limitations in "acquiring and using information." (R. 63–64). The psychological consultant supported the assessment with citations to evidence submitted as part of J.R.C.'s claim, including specific findings and exam results from a psychological consultation, speech and language evaluation exam results, J.R.C.'s individualized education program (IEP), and J.R.C.'s grades and promotion to the next grade level in school. The psychological consultant also determined that J.R.C. had "less than marked limitations" in "attending and completing tasks." (R. 64). The consultant supported that assessment with a discussion noting that J.R.C. had not presented with hyperactivity or inattentiveness at a consultative exam and that J.R.C. had "[d]emonstrated a fair level of concentration during the evaluation." (R. 64). The psychological consultant further reviewed J.R.C.'s medical records, and noted that J.R.C. was not using medications as treatment for his ADHD. (R. 64). The same is true for the consultants' assessment at the initial level that J.R.C. had "less than marked" limitations in "interacting and relating with others," (R. 64–65), and in

"caring for yourself," (R. 65), and "no limitations" in "health and physical well-being." (R. 65). The consultants cited to and discussed the evidence that was in the record in assessing J.R.C.'s limitations in the six domains.

At the reconsideration level, the psychological consultant affirmed the determinations made by the psychological consultant at the initial level. Underneath each assessment performed by the initial-level consultant, the reconsideration-level consultant wrote whether additional medical records had been submitted and whether the assessment of the domain was affirmed. For example, for "acquiring and using information," the psychological consultant at the reconsideration level wrote underneath the analysis performed by the consultant at the initial level that worsening had been reported but also that no additional medical evidence had been submitted that related to that domain. (R. 79–80). For "attending and completing tasks," "interacting and relating with others," and "caring for yourself," the psychological consultant at the reconsideration level likewise wrote underneath the assessment from the initial level that worsening had been reported but also that the medical evidence related to those domains was "largely age appropriate." (R. 80–81). The pediatric consultant at the reconsideration level supported findings within the six domains by citation to and discussion of J.R.C.'s medical records.

In sum, the ALJ's assessment of the supportability factor—specifically, the ALJ's conclusions that the consultants' opinions were supported by the record and that the opinions provided detailed explanations—is substantiated by a review of those opinions and the record evidence those opinions relied upon.

<u>Consistency</u>.

As noted above, in arguing that the ALJ improperly found the opinions persuasive even though the opinions did not consider evidence developed after the opinions were rendered, Plaintiff

13

takes issue with the ALJ's assessment of the consistency factor—whether the consultants' opinions were consistent with the evidence from other medical sources and nonmedical sources in the claim. The ALJ's decision reflects that the ALJ considered the persuasive value of the opinions in the context of evidence that was developed after the opinions were rendered and thus Plaintiff's argument in this regard is unavailing. Indeed, in finding the consultants' opinions persuasive because they were "generally consistent with the evidence as a whole," (R. 24), the ALJ cited to a speech-language therapy re-evaluation completed in March 2021. (R. 24) (citing (R. 872)). The evaluation found that J.R.C. has "mild/moderate receptive language delay" and "moderate expressive language delay." (R. 872). The evaluation occurred after the initial and reconsideration determinations were rendered in July 2020 and October 2020, respectively. *See* (R. 872). The ALJ also noted in his decision that J.R.C. was "was able to receptively understand common use objects, shapes, colors, letters, and numbers as well as basic phonics and sight words." (R. 24). This conclusion accords with the same March 2021 speech-language therapy re-evaluation. *See* (R. 872) ("Functionally, [J.R.C.] is able to receptively understand common use objects, shapes, colors, letters, and numbers as well as basic phonics and sight words.").

In further arguing that the ALJ failed to discuss the consistency of the consultants' opinions, Plaintiff also notes that a June 2020 speech language assessment available to the consultants reflects that J.R.C. had "severe receptive language deficit" and "moderate expressive language deficit," (R. 637), yet the consultants assessed J.R.C. as having a "marked" limitation in only "acquiring and using information." This argument speaks to the supportability factor and not the consistency factor. Indeed, the pediatric consultant at the initial level *did* consider the June 2020 speech and language pathology evaluation when determining that J.R.C. had a "less than marked" limitation in "interacting and relating with other." (R. 65). The consultant noted the

14

speech and language pathology evaluation report and cited to specific observations and findings made in that report in concluding that J.R.C. has "at most less than marked limitation." (R. 65) (discussing (R. 634–637)).

In discussing the evidence in the record prior to assessing the persuasiveness of the opinions at issue, the ALJ did note that Plaintiff had reported at the reconsideration level that J.R.C.'s condition had worsened. (R. 20). However, prior to drawing his conclusions on the persuasiveness of the consultants' opinions, the ALJ determined that J.R.C.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 21). This conclusion was followed by the ALJ's summary of the evidence and testimony in the record. As relevant here, the evidence considered and summarized by the ALJ included J.R.C.'s December 2019 psychiatric evaluation; January 2020 occupational therapy re-evaluation; January 2020 mental status examination; February 2020 speech-language therapy evaluation; May 2020 IEP meeting; June 2020 speech-language pathology evaluation; and June 2020 psychological consultation; Plaintiff's January 2021 report that J.R.C. had made significant improvements through occupational therapy; J.R.C.'s March 2021 speech-language therapy re-evaluation; and J.R.C.'s January 2022 occupational therapy re-evaluation. The ALJ's decision thus reflects that the ALJ had extensively considered the evidence in the record before determining that consultants' opinions were generally consistent with that evidence.

Accordingly, the Court finds no error in the ALJ's assessment of the consistency factor.

<u>Familiarity with Social Security Regulations</u>.

Last, the Court turns to Plaintiff's argument that the ALJ failed to explain why the consultants' familiarity with Social Security regulations and program standards weighs in favor of finding the consultants' opinions persuasive.

In determining that the consultants' opinions were supported by the record and contained detailed explanations, the ALJ also noted that the consultants were familiar with the Social Security Administration's regulations and program standards. The consultants' familiarity with Social Security Administration regulations relates to the "other factors" that the ALJ must consider, as opposed to the "supportability" and "consistency" factors. Under the governing regulations, the ALJ must consider "other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or *an understanding of* [*the Social Security Administration's*] *disability program's policies and evidentiary requirements*." 20 C.F.R. § 404.1520c(c)(5) (emphasis added). However, an ALJ "may, but [is] not required to, explain how [he] considered the factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. § 404.1520c(b)(2). Indeed, "[c]ourts have found that '[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how [s]he considered any other factor in determining persuasiveness.'" *Bevis v. Comm'r of Soc. Sec.*, 552 F. Supp. 3d 1266, 1271–72 (M.D. Fla. 2021). Though Plaintiff takes issue with the ALJ's purported failure to explain why the consultants' familiarity with the regulations weighs in favor of finding the opinions persuasive, the ALJ was not required to do so.

16

## VI. RECOMMENDATIONS

Based on the foregoing, the Court finds that the ALJ did not err in his articulation of his legal analysis and that substantial evidence supports the ALJ's decision. Thus, the undersigned respectfully **RECOMMENDS** that:

(1) Plaintiff's Motion for Summary Judgment (ECF No. 20) should be **DENIED**;

(2) The Acting Commissioner's Motion for Summary Judgment (ECF No. 22) should be **GRANTED**; and

(3) The final decision of the Acting Commissioner should be **AFFIRMED**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 8th day of December, 2023.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable K. Michael Moore
Counsel of Record